**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————————   x

Jeannie Patora, individually on            :
behalf of herself and all others similarly   :
situated,                                   :       Case No.
                                            :
        Plaintiff,            :
v.                                          :
                                            :
                                            :       **CLASS ACTION COMPLAINT**
Vi-Jon, LLC,                                :
                                            :       <u>**JURY TRIAL DEMANDED**</u>
        Defendant.            :
                                            :
                                            :
——————————————————————————   x

        Plaintiff Jeannie Patora (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

    1.    This action seeks to remedy the deceptive and misleading business practices of Vi-Jon, LLC (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's Magnesium Citrate Saline Laxative products (hereinafter the "Products")[1] throughout the state of New York and throughout the country.

---

[1] The Products include, but are not limited to, Best Choice 10oz Lemon Mag Citrate; Best Choice 10oz Cherry Citrate; Best Choice 10oz Grape Citrate; Care One 10oz Lemon Mag Cit; Care One 10oz Cherry Cit; Cariba 10oz Lemon Mag Citrate; Cruz Blanc 10oz Lemon Mag Cit; CVS 10oz Lemon Mag Cit; CVS 10oz Lemon Mag Cit; CVS 10oz Cherry Citrate; CVS 10oz CLR Grape Citrate; Discount Drug Mart 10oz Lemon Mag Citrate; Equaline 10oz Lemon Mag Cit; Equaline 10oz Cherry Citrate; Equate 10oz Lemon Mag Cit SRP; Equate 10oz Cherry Citrate SRP; Equate 10oz Grape Mag Cit SRP; Exchange Select 10oz Lemon Mag Cit; Family Wellness 10oz Cherry Citrate; Family Wellness 10oz Cherry Citrate; Good Sense 10oz Lemon Mag Cit; Good Sense 10oz Cherry Citrate; Harris Teeter 10oz Lemon Mag Citrate; HEB 10oz Lemon Mag Citrate; HEB 10oz Cherry Citrate; HEB 10oz Grape Mag Citrate; Health Mart 10oz Lemon Mag Cit; Health Mart 10oz Cherry Cit; Kroger 10oz Lemon Mag Citrate; Kroger 10oz Lemon Mag Citrate; Kroger 10oz Grape Citrate; Leader 10oz Lemon Mag Cit; Leader 10oz Cherry Cit; Leader 10oz Grape Mag Cit; Major 10oz Lemon Mag Citrate; Meijer 10oz Lemon Mag Cit; Meijer 10oz Cherry Citrate; Premier Value 10oz Low Sod Lem Cit; Premier Value 10oz Cherry Cit; Publix 10oz Lemon Mag Cit; Publix 10oz Cherry Citrate; Quality Choice 10oz Lemon Mag Cit; Quality Choice 10oz Cherry Citrate; Rexall 10oz Lemon Mag Citrate; Rexall 10oz Cherry Cit; Rexall 10oz Grape Mag Cit; Rite Aid 10oz Lemon Citrate; Rite Aid 10oz Cherry Citrate; Signature Care 10oz Lemon Mag Cit; Signature Care, 10oz Cherry Cit; Sound Body 10oz

2.      Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that consumption of the Products may increase the risk of contracting invasive infections.

3.      As described in further detail below, the Products contain *Gluconacetobacter liquefaciens*, which could lead to serious and life-threatening adverse health consequences.[2]  The risk of serious infection is also particularly concerning for immunocompromised individuals that are highly susceptible to life threatening diseases and even death from *Gluconacetobacter liquefaciens* ingestion.[3]

4.      Defendant specifically lists both the active and inactive ingredients of the Products on the labeling; however, Defendant fails to disclose that the Products contain, or are at the risk of containing, *Gluconacetobacter liquefaciens*.

5.      A few representative examples of Defendant's lack of disclosure on the Products are depicted below:

---

Lemon Mag Cit; Sunmark 10oz Lemon Mag Cit; Sunmark 10oz Cherry Cit; Swan 10oz Lemon Mag Citrate; Swan 10oz Cherry Citrate; TopCare 10oz Lemon Mag Citrate; TopCare 10oz Cherry Cit; Up&Up 10oz Lemon Mag Cit; Walgreens 10oz Lemon Mag Cit; Walgreens 10oz Cherry Cit; and Walgreens 10oz Grape Mag Cit.

[2] *Gluconacetobacter liquefaciens* is a gram-negative bacterium that is associated with liquid ingestion, *see*: https://dergipark.org.tr/en/download/article-file/1005787#:~:text=Gluconacetobacter%20liquefaciens%20is%20a%20Gram,was%20associated%20with%20seve re%20immunodeficiency.; *see also* https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/vi-jon-llc-expands-voluntary-nationwide-recall-magnesium-citrate-saline-laxative-oral-solution-lemon.

[3] *Id.*









4





6.     *Gluconacetobacter liquefaciens* is recognized to be an incredibly dangerous and life-threatening substance, specifically for immunocompromised individuals, and especially in the context of oral ingestion.[4]

7.     Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from harmful known substances, including *Gluconacetobacter liquefaciens*.

8.     Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the magnesium citrate they purchase will not contain, or risk containing, any knowingly harmful substances that could be life threatening.

9.     Unfortunately for consumers, like Plaintiff, the laxative Products they purchased contain *Gluconacetobacter liquefaciens*.

10.     Defendant is using a marketing and advertising campaign that omits from the ingredients lists that the Products include *Gluconacetobacter liquefaciens*. This omission leads a reasonable consumer to believe they are not purchasing a product with a known bacterium when in fact they are purchasing a product contaminated with *Gluconacetobacter liquefaciens*.

11.     Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves. As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing a product that is safe for oral ingestion and does not contain any harmful bacterium. Indeed, consumers expect the ingredient listing on the packaging and labels to accurately disclose the

---

[4] Maxwell Olenski, et al., A Case of Gluconacetobacter liquefaciens Bacteremia Associated with Sugarcane Juice Ingestion, Journal of Microbiology and Infectious Diseases, 2020; 10(1):62-67, accessible at: https://dergipark.org.tr/en/download/article-file/1005787#:~:text=Gluconacetobacter%20liquefaciens%20is%20a%20Gram,was%20associated%20with%20severe%20immunodeficiency.

ingredients within the Products.  Thus, reasonable consumers would not think that Defendant is omitting that the Products contain, or are at risk of containing, *Gluconacetobacter liquefaciens*.

12.     Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, *Gluconacetobacter liquefaciens*, which is dangerous to one's health, well-being, and even life.  Nevertheless, Defendant does not list or mention *Gluconacetobacter liquefaciens* anywhere on the Products' packaging or labeling.

13.     Plaintiff and Class Members relied on Defendant's misrepresentations and omissions of the safety of the Products and what is in the Products when they purchased them.

14.     Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was a magnesium citrate product contaminated with a known bacterium that is harmful to consumers health, and lives, which is even more so true for immunocompromised individuals.

15.     That is because Defendant's Products containing, or at risk of containing, a known dangerous substance have no value.

16.     As set forth below, magnesium citrate products, such as Defendant's Products, that contains magnesium citrate, are in no way safe for humans and are entirely worthless.

17.     Alternatively, Plaintiff and Class Members paid a price premium for the Products based upon Defendant's health-conscious marketing and advertising campaign including its false and misleading representations and omission on the Products' labels.  Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

18.     Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§349 and 350.  Defendant also breached and continues to breach its warranties regarding the Products.

19.     Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

20.     Defendant manufactures, markets, advertises, and sells magnesium citrate to treat constipation.  Specifically, magnesium citrate causes the intestine to release water into the stool, which softens the stool and relieves constipation and irregularity.[5]

21.     Pursuant to the back labeling of the Products, it is recommended that the Products be used for relief of occasional constipation (irregularity) and that it generally produces bowel movement in a half-hour to six hours.[6]  An example of these representations on the back labeling of a few of the Products are depicted below:

---

[5] https://www.webmd.com/diet/health-benefits-magnesium-citrate#1.
[6] https://www.dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=e562bf42-b9e1-4ea8-b880-7bec4dd620b4&type=display.



**Zoomed In**





**Zoomed In**





**Zoomed In**



22.     The most common active ingredients in magnesium citrate products sold in the United States include magnesium citrate and saline laxative.[7]

23.     Sales of magnesium citrate have steadily increased as consumers have become more vigilant and health conscious regarding their regular bowel movements.  With that in mind, the magnesium citrate market was valued at 4.05 million USD in 2021 and is expected to grow with a compound annual growth rate of 3.59% from 2021 to 2027.[8]

24.     Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest.  Companies such as Defendant have capitalized on consumers' desire for laxative products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

25.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as *Gluconacetobacter liquefaciens*, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

26.     The Products' packaging does not identify *Gluconacetobacter liquefaciens*. Indeed, *Gluconacetobacter liquefaciens* is not listed in the ingredients section, nor is there any warning about the inclusion (or even potential inclusion) of *Gluconacetobacter liquefaciens* in the Products.  This leads reasonable consumers to believe the Products do not contain and are not at risk of containing dangerous chemicals like *Gluconacetobacter liquefaciens*.

---

[7] https://stopandshop.com/groceries/health-beauty/digestion-nausea/fiber-laxatives/careone-magnesium-citrate-saline-laxative-lemon-flavor-10-oz-btl.html.
[8] https://www.marketwatch.com/press-release/magnesium-citrate-market-size-2022-2027-global-industry-growth-share-demand-insights-trends-key-players-geographical-segmentation-key-findings-gross-margin-and-revenue-forecast-research-2022-06-01.

27.    However, despite the fact that the Products' labeling and ingredient listing, Defendant omits that the Products contains or is at risk of containing *Gluconacetobacter liquefaciens*.

28.    *Gluconacetobacter liquefaciens* can enter the manufacturing process of food and beverages in several ways.[9]

29.    Specifically, *Gluconacetobacter liquefaciens* is a gram-negative bacterium that grows best in sucrose-rich mediums such as sugarcane sap.[10]   Due to this, *Gluconacetobacter liquefaciens* occurs mainly in sugary, acidic, and alcoholic habitats, and can develop during the manufacturing process of fruit juice and citrus products, like the Products.[11]   To that extent, Defendant has complete control of overseeing the manufacturing of its products, including the Products, and had the ability to prevent the *Gluconacetobacter liquefaciens* contamination of the Products.

30.    Moreover, twenty-first century research has confirmed that *Gluconacetobacter liquefaciens* ingestion can cause death to immunocompromised individuals.[12]

31.    Defendant, Vi-Jon, LLC, is one of the oldest and leading manufacturers of private label personal care products in the United States and is responsible for the manufacturing of some the biggest corporations' over-the-counter magnesium citrate products.   For example, Defendant

---

[9] Karel Kersters, et al., *The Family Acetobacteraceae: The Genera Acetobacter, Acidomonas, Asaia, Gluconacetobacter, Gluconobacter, and Kozakia*, The Prokaryotes, Third Edition, Volume 5, pp. 163-200 (1981), accessible at: https://link.springer.com/referenceworkentry/10.1007/0-387-30745-1_9.

[10] R.K. Hommel, Encyclopedia of Food Microbiology, Science Direct, (Second Edition), 2014, accessible at: https://www.sciencedirect.com/topics/agricultural-and-biological-sciences/gluconacetobacter.

[11] *Id.*

[12] Maxwell Olenski, et al., A Case of Gluconacetobacter liquefaciens Bacteremia Associated with Sugarcane Juice Ingestion, Journal of Microbiology and Infectious Diseases, 2020; 10(1):62-67, accessible at: https://dergipark.org.tr/en/download/article-file/1005787#:~:text=Gluconacetobacter%20liquefaciens%20is%20a%20Gram,was%20associated%20with%20severe%20immunodeficiency.

manufactures magnesium citrate products for CVS, Rite Aid, Walgreens, Walmart, Target, Krogers, and Publix, amongst many others.

32.     This is why recent testing revealing *Gluconacetobacter liquefaciens* in Defendant's Products is particularly concerning.

33.     Defendant recently conducted microbial testing of its manufactured magnesium citrate saline products, which revealed the presence of *Gluconacetobacter liquefaciens* in the Products.[13]

34.     Further independent testing conducted also confirmed and demonstrated the presence of *Gluconacetobacter liquefaciens* in the Products.

35.     Of even greater concern, Defendant has received three reports from consumers that suffered an adverse reaction from consumption of the Products.[14]  Defendant is in the process of investigating these reports.[15]

36.     Moreover, Defendant has issued, to date, three voluntary recalls of the Products.[16]

37.     The voluntary recalls sparked the Food and Drug Administration (hereinafter "FDA"), to publish the Defendant's study and recalls.  The FDA also labelled the recalls with a Class One designation, which is the FDA's most serious recall classification as it warns that the use of the affected product could cause serious adverse health consequences.[17]

38.     Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing laxative products for many years, including producing and manufacturing the Products.

---

[13] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/vi-jon-llc-expands-voluntary-nationwide-recall-all-flavors-and-lots-within-expiry-magnesium-citrate.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*

39.    Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of *Gluconacetobacter liquefaciens* contamination.

40.    Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products.  Such knowledge is not readily available to consumers like Plaintiff and Class Members.

41.    Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

42.    Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing *Gluconacetobacter liquefaciens* is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

43.    Defendant's misrepresentation and omission was material and intentional because people are concerned with what is in the products that they ingest into their bodies.  Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign, the Products labels, and the listed ingredients.  Defendant knows that if they had not omitted that the Products contained *Gluconacetobacter liquefaciens*, then Plaintiff and the Class would not have purchased the Products at all.

45.    Through its deceptive advertising and labeling, Defendant has violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article

is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

46.     Consumers rely on marketing and information in making purchasing decisions.

47.     By omitting that the Products include *Gluconacetobacter liquefaciens* on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase laxative with a harmful bacterium.

48.     Defendant's deceptive representation and omission are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

49.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

50.     Defendant's false, misleading, and deceptive misrepresentation and omission are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

51.     In making the false, misleading, and deceptive representation and omission described herein, Defendant knows and intended that consumers would pay a premium for a product marketed as having the ability to provide laxative relief without the bacterium *Gluconacetobacter liquefaciens* over comparable products not so marketed.

52.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

a.   Paid a sum of money for Products that were not what Defendant represented;

b.   Paid a premium price for Products that were not what Defendant represented;

c.   Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted; and

d.   Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

53.   Had Defendant not made the false, misleading, and deceptive representation and omission, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

54.   Plaintiff and the Class Members paid for Products that do not contain *Gluconacetobacter liquefaciens*.   Since the Products do indeed contain *Gluconacetobacter liquefaciens*, a harmful bacterium, the Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

55.   Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.   Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.   Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

56.   Plaintiff and Class Members read and relied on Defendant's representation about the benefits of using the Products and purchased Defendant's Products based thereon.   Had Plaintiff and Class Members known the truth about the Products, i.e., that it contains a harmful

18

bacterium (i.e. *Gluconacetobacter liquefaciens*), they would not have been willing to purchase it at any price, or, at minimum would have paid less for it.

## JURISDICTION AND VENUE

57.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York, and Defendant Vi-Jon, LLC is a citizen of Delaware and Missouri; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

58.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

59.     Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

**Plaintiff**

60.     Plaintiff Jeannie Patora is a citizen and resident of Dutchess County, New York. During the applicable statute of limitations period, Plaintiff purchased various Products that were subject to the recall during the recall period, including, but not limited to, the CVS and Rite Aid Magnesium Citrate, Lemon Flavor, 10oz Products at retail locations in Dutchess County during the Class Period.  Plaintiff became ill as a result of her consumption of the Rite Aid Magnesium Citrate, Lemon Flavor, 10oz Product.

61.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products.  Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products.  The Products Plaintiff received were worthless because they contain the known harmful substance, *Gluconacetobacter liquefaciens*. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions.  Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

62.     Defendant, Vi-Jon, LLC, is a Delaware corporation with its principal place of business in St. Louis, Missouri.  Vi-Jon LLC is one of the largest drugstore manufacturers of over-the-counter drug products in the United States and responsible for producing some of the most popular over-the-counter drug products at frequented pharmacies, including the Products.

63.     The sole member of Defendant is Vi-Jon Holdings, Inc., a Delaware corporation with its principal place of business in St. Louis, Missouri.

64.     Defendant manufactures, markets, advertises, and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## CLASS ALLEGATIONS

65.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

20

66.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period.

67.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

68.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

69.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

70.     Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

71.     Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.  Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.  Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

21

    c.   Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

    d.   Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

    e.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

72.    <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

73.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class, she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

74.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

75.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i.   It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase their Products.

76.   Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

77.   Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

78.   New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

79.   The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

80.   There is no adequate remedy at law.

81.   Defendant misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

82.     Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have *Gluconacetobacter liquefaciens* —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendant's Products and to use the Products when they otherwise would not have.  Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

83.     Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

84.     Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

85.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

86.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 350
**(On Behalf of Plaintiff and the New York Subclass Members)**

87.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

88.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

89.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

90.     Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it misrepresents that the Products are safe for use and doesn't list that the Products contain *Gluconacetobacter liquefaciens*.

91.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

92.     Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

93.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

94.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

95.     Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

96.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.   Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

97.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
**(On Behalf of Plaintiff and All Class Members)**

98.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

99.     Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are safe for use and do not contain *Gluconacetobacter liquefaciens*.

100.     Defendant omitted that the Products contain a known bacteruim from its ingredients labeling. This omission would lead reasonable consumers did not contain a known bacterium, when in fact, the Products were contaminated with *Gluconacetobacter liquefaciens* as stated herein.

101.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

102.    These affirmations of fact became part of the basis for the bargain and were material to Plaintiff and Class Members' transactions.

103.    Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

104.    Defendant knowingly breached the express warranties by including *Gluconacetobacter liquefaciens* in the Products sold to Plaintiff and the Class without properly notifying them of their inclusion in the Products.

105.    Within a reasonable time after it knew or should have known, Defendant did not change the Products' label to include *Gluconacetobacter liquefaciens* in the ingredients list.

106.    Defendant thereby breached the following state warranty laws:

a.      Code of Ala. § 7-2-313;

b.      Alaska Stat. § 45.02.313;

c.      A.R.S. § 47-2313;

d.      A.C.A. § 4-2-313;

e.      Cal. Comm. Code § 2313;

f.      Colo. Rev. Stat. § 4-2-313;

g.      Conn. Gen. Stat. § 42a-2-313;

h.      6 Del. C. § 2-313;

i.      D.C. Code § 28:2-313;

j.      Fla. Stat. § 672.313;

k.      O.C.G.A. § 11-2-313;

l.      H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.   R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.     Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.     Va. Code Ann. § 59.1-504.2;

uu.     Wash. Rev. Code Ann. § 6A.2-313;

vv.     W. Va. Code § 46-2-313;

ww.   Wis. Stat. § 402.313; and

xx.     Wyo. Stat. § 34.1-2-313.

107.    As a direct and proximate result of Defendant's breach of the express warranties, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) An Order requiring Defendant to establish a blood testing program for Plaintiff and the Class, as well as to establish a medical monitoring protocol for Plaintiff and the Class to monitor individuals' health and diagnose at an early stage any ailments associated with exposure to *Gluconacetobacter liquefaciens*;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated: August 5, 2022

THE SULTZER LAW GROUP P.C.

By:    Jason P. Sultzer /s/
_____
Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Daniel Markowitz, Esq.
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

*Counsel for Plaintiff and the Class*

31